Our next case is 23-12, 40, United States v. Gaye. May it please the Court, Jessica Stengel appearing on behalf of Mr. Joseph Gaye. But for a few very carefully drawn exceptions, the Fourth Amendment strictly prohibits Could you put the mic a little bit closer to you? Is that better? Better, yes, thank you. Sorry. But for a few narrowly drawn exceptions, the Fourth Amendment strictly prohibits warrantless, suspicionless, and nonconsensual searches and seizures. Yet, all of the evidence used in this case was obtained in contravention of the Fourth Amendment. There were two distinct Fourth Amendment violations. First, we have the overbroad warrant. And second, there was the warrantless, suspicionless, and nonconsensual search and seizure that happened at Denver Health. And unless the Court has a preference in the order in which I address them, I'll begin with the warrantless search and seizure that happened at Denver Health. This can only be described as furthering the state's general interest in law enforcement. So the Supreme Court has made clear that while in special needs cases, state actors may not need a warrant or suspicion in order to conduct a search and seizure. However, in those limited instances, they have been entirely divorced from the state's general interest in crime control or law enforcement. And that cannot be said here. Denver Health. Why did Mr. Gay have a property or a privacy interest in an instrument of a crime that was inflicted on him? I mean, he claimed that he'd been shot by an intruder. It wasn't the bullets in him, but it's evidence of criminal conduct that the police are going to use to investigate the crime. I just think it's kind of an unusual argument that because I've been shot and the bullet's still in my body, that it's mine and I have a privacy interest in it. I mean, what if he'd been stabbed and the knife was sticking out of his shoulder and the surgeons removed the knife at the hospital? Is that problematic under the Fourth Amendment if the police take it as evidence of a crime? Your Honor, I would say that it is. I would say when you submit to any type of medical treatment, there is a reasonable expectation of privacy that the result of that treatment will not be disseminated to minimally non-medical personnel, but it certainly will not be shared with law enforcement for the sole purpose of furthering the state's general interest in criminal control. Well, I agree at a general level, but here we're talking about evidence of a crime, physical evidence of a crime that's not the victim's. I mean, why would he have any interest in it under the Constitution? I think why is sort of a fun question, but not really germane to the Fourth Amendment. I think the notion more is that it will contain evidence that says something about him. And again, it is no different than the officer being in the operating room without a warrant, without consent, and without reasonable suspicion saying, and the officer is the one actually taking the bullet out, logging the chain of custody, putting it in the evidence bag, saying that it might be related to some crime. And under that guise, Your Honor, I would say this is no different than what happened in the city of Indianapolis v. Edmonds where clearly there was a general interest in getting drugs off the street. And so they were doing these spot checks, random roadblocks. And the Supreme Court said very clearly, you bet. That's a great idea, Indianapolis. You need to get drugs off the street. However, you have nothing more than this generalized interest in law enforcement, and that doesn't suffice when you're talking about someone's Fourth Amendment rights. And there is nothing different in this case, I would submit to the Court. What if Mr. Gay had called 911 and said, an intruder forced me to swallow poison, and I think I'm dying. They come. He's taken to the hospital. The hospital pumps his stomach. And then they test the fluid to make sure it was poison and that he was not threatened. Would that be an illegal search? Absolutely, Your Honor. Under that guise, I would submit to the Court that you're saying calling 911 obviates the Fourth Amendment. And I don't think that we are ready to create such a limitless world, because essentially, that would invite the intrusion of law enforcement into daily American life. And we also don't want to deter people from calling 911 on the off chance that something that will be found during the 911 call can then subsequently be used in a criminal prosecution. The Fourth Amendment does have limits, and I think we have, given that Denver Health is a state actor, there was no warrant, there was no consent. The extensive involvement in law enforcement in the collection of evidence and the preservation of evidence solely for the purpose of future prosecution cannot be sanctioned. So that would eliminate the bullet that they took out of Mr. Gay. And that was absolutely used in obtaining his conviction. Then we have everything that was seized pursuant to what can only be described as an overbroad or an otherwise general warrant. Well, counsel, can I stop you before you move on? Counsel, could you address the implied consent argument that this was a medical emergency, he impliedly consented to being treated? Absolutely, Your Honor. Implied consent, in my very non-esteemed opinion, doesn't play a role in the Fourth Amendment argument. He's not consenting to law enforcement involvement. He is consenting to medical treatment. And again, it comes back to what the Court noted in Ferguson, is that we have a reasonable expectation of privacy when we seek medical treatment, that the results of that treatment will not be disseminated to non-medical personnel. And I would say, more broadly, it will not be disseminated, or more specifically, excuse me, it will not be shared with law enforcement for the explicit purpose of future prosecution. So, in other words, if you consent to medical treatment, anything that is produced in that medical treatment can never be given to the police? Never is a strong word, Your Honor. I would say that absent a warrant, or absent consent, it could not be shared with law enforcement. So after they took the bullet out, they should have asked him, can we give this to law enforcement? Absolutely, or law enforcement could have done their job and secured a warrant. Either way, yes. Okay, thank you. Does it matter that Mr. Gay lied about the origin of the wound? No, not at all. The reasonable expectation of privacy that we enjoy when we seek medical treatment is not dependent on us lying to the police or not. Well, you know, I just think about a case we had a couple of terms ago that there was a backpack nearby, the defendant denied that it was his property, and, you know, we, the court, you know, had to consider whether that was abandoned property, that's one of the arguments here, but Mr. Gay denied ownership of the bullet, you know, the fact that it was in his body doesn't make it any, it's not his property, is it? He's denied that he shot himself. Again, I think...  The difference is you are taking something out of a person's body strictly to create evidence for future prosecution. An abandonment is a very specific doctrine under the law, and it requires knowing disavowal or knowing separation of a person from that thing. And so abandoning the backpack is fundamentally different than saying somebody shot me. And if the bullet had gone through his body and was on the floor, no problem. We'd be in a very different situation, Your Honor. So with a little bit of time remaining, with the Court's permission, I would like to address the overbroad warrant. This is a case where the warrant itself lacked any discernible limits. There was no crime identified. There are no limits as to what can be searched and seized. And quite frankly, all of the evidence seized reflects the limitless nature of this particularly overbroad warrant. The four corners of the warrant make clear that it's uncertain as to what police are investigating. And in the Fourth Amendment, it lets us know that the particularity requirement has multiple pieces. It requires both a showing of probable cause and for the warrant to particularly describe the place to be searched and the persons or items to be seized. Admittedly, this warrant particularly described the place to be searched, but nothing else was there. And good faith cannot save this overbroad warrant. It is evident from the face of the warrant that law enforcement had no guiding principles in terms of what to search or seize. And the purpose of the exclusionary rule is to prevent law enforcement from knowingly violating the Constitution. And under the government's interpretation of this case, the consequences of allowing the evidence seized as a result of this overbroad warrant are many. First of all, allowing the evidence to remain intact would basically rewrite the Fourth Amendment so that the particularity requirement is no longer instead. Second, it would turn the reviewing judicial officer into a meaningless rubber stamp. And third, it would effectively eliminate any good faith analysis because with an overbroad warrant, all that would be required to save it is a creative prosecutor after the fact to come in, map on one to seven potential crimes. If we incorporate the affidavit, doesn't that, and I know you disagree about that point, I assume that we can incorporate it, doesn't it fairly describe the distinct crime of aggravated robbery? And I think you might construe it as describing the distinct crime of false reporting. And why isn't that enough to narrow the breadth of the warrant? I would say it does not distinctly describe the crime of aggravated robbery. And clearly using the language from the affidavit where the officer in his concluding statement says that he believes Gay may have shot himself. May is simply indicative of a possibility. It is not the probable cause that would warrant a man of reasonable caution to believe that a crime has been or is being committed. Further evidence of the lack of particularity in the affidavit comes on page 69 in volume one of the record on appeal where the United States in arguing that the warrant was not overbroad says, well, he's either describing false statement or possibly an attempt to influence a public servant. Again, it's simply a matter of can a prosecutor come up with some potential crimes that could maybe be mapped on to the factual situation? And that's not what the Fourth Amendment requires. That's too little, too late and after the fact. And unless the court has further questions, I would like to reserve my time for  May, thank you. May it please the court. Good morning, Alexander Duncan on behalf of the United States. I'd like to first talk about how the warrant in this case was sufficiently particularized. Here we have a warrant that gives a description of suspected criminal activity and that is specific enough to give those executing officers guidance to distinguish between items that may or may not be searched, may or may not be seized. Here, as the court is aware, Mr. Gay called 9-1-1. He reports that he's been shot, but he doesn't say he did it himself. He says that someone else shot him. During the course of the 9-1-1 call, officers respond and they see some bad shape. He's on the ground. He's bleeding. They apply a tourniquet and when paramedics come, they then get him to the hospital. Those responding officers then start to think this might not add up. Based on the fact that no one else is in the building, there's no signs of forced entry, shell casings on his desk near where he was down on the ground. They start thinking that maybe he shot himself. So they secure his office. They call Detective Long and Detective Long then gets a search warrant. He includes many of the facts that I've just listed to the court here. He includes the facts that he knew at the time. And at the end, he says, based on his experience, he thinks that Mr. Gay may have shot himself. So all of those facts that are on the face of the affidavit show that the officers are investigating, as Judge Tinkovich, you alluded to, a crime of false reporting. Because it's a crime to call 911 and say that you're reporting a crime that didn't actually happen here. Why aren't you also arguing that there's a plausible report of aggravated robbery? Your Honor, not aggravated robbery here. That comes more for when we're at the hospital, what the hospital could have thought when they see the bullet in plain view, that that's going to be evidence of some crime. Here, based on the affidavit, it seems that it's false reporting and that the underlying crime for that to see whether or not he has falsely reported a crime relates to a shooting. And so that could relate to the, you know, reckless discharge of a weapon as well. But essentially, there's a small little constellation of criminal conduct here that the officers are investigating. They're investigating essentially whether he shot himself, because if he did shoot himself, that would mean that he has committed the crime of false reporting. So to get to the affidavit, the court has to ensure that it was attached and incorporated here. Mr. Gay makes arguments about attachment in this case. There's no question that the affidavit was incorporated here. The government believes that those arguments are both waived via invited air or because he intentionally relinquished those arguments. If those are merely forfeit, then they go through the plain air standard. And he can't meet the plain air standard here. He can't meet it because we don't see an air here below the government in response to the Mr. Gay's brief at the district court. Mr. Gay at the district court says, judge, please consider this incorporated affidavit. Look how broad it makes this warrant. And the government said, we understand he's not talking about attachment here. He's not challenging that. And then in its reply brief, Mr. Gay again says, look, he doesn't mention attachment. He once again mentions the affidavit, how incorporated it is, and because of the affidavit that now we have a general warrant. So for those reasons, we believe that waiver of forfeiture applies here. But substantively here, the court had a record on which it could find that the warrant was attached. The government provided the warrant and the affidavit to the court. And that warrant and affidavit, they're signed by the same county court judge, the Denver county court judge at the same time. So that is evidence of attachment here. Next, if the court disagreed, obviously the next step is severance. The district court didn't do that in this case. The government didn't request severance. And instead it went to good faith. However, under severability analysis, at worst, this would be an overly broad warrant, not a general warrant. Under CODO, which Your Honor wrote, this court could perform a severability analysis if it wanted to and merely sever an overbroad portion. The guns, the ammo portion, the clothing portions, those are admissible here. And the court could affirm on those grounds. Finally, the court could also take a look at good faith. The district court did that here. And I think that we have all the hallmarks of good faith. In this case, we have a detective who writes an affidavit and he includes all the facts that he knows at the time. It's not one of these cases where he's omitting facts. He says plainly in there, we think Mr. Gay may have shot himself. If he didn't say that, we may be here under a different standard, a Frank standard of omitting material facts. But he tells the county court judge everything. But before he tells the county court judge everything in the affidavit, he goes to a prosecutor who reviews the warrant. The judge then signs the warrant. The judge signs the affidavit. Detective Long is the detective who then executes the search. And he only then collects evidence of items that's related, that is directly related to that search. So here, this is the case, the normal case where officers are acting in good faith and there's really nothing to deter here. Is it problematic that he doesn't say in the affidavit that he suspects the crime of false reporting? Your Honor, under Lee, I think the facts on the face of the affidavit do give rise to specific criminal conduct here, which give the executing officers guidance about what they can and can't serve. Would it be better if he put in a statutory site? Yes. Is it fatal to the particularity analysis? No. I think Lee was a little more specific than we have here. Lee, here we do have, Lee is somewhat distinguishable, I think, Your Honor. But I think also a statutory site won't necessarily only save the warrant here, too. For instance, as this court has held a statutory site to the general federal conspiracy law, that won't save, that won't particularize a warrant, nor will a general site to the import-export laws when you know more facts. So here, this wasn't a warrant to search for any time that Mr. Gay had talked to law enforcement. Did he lie in any of those other occasions? It was a specific occasion. The warrant also didn't allow them to seize any items related to, say, tax fraud, anything else that could have been in his office that could have been criminal activity. We don't have anything that relates to that. So, Your Honor, no, I would say it's not fatal to the warrant under particularity or under the good faith analysis. If the court doesn't have any more questions there, I'll turn to the bullet in this case. And here, in this case, it's undisputed that no one ever got a warrant for that bullet. But here, no warrant was ever necessary. And we have a few exceptions to the Fourth Amendment that the government is relying on here. The first one is consent. Mr. Gay called 9-1-1 and he said, I've been shot. I've been shot by a masked man. And he clearly is not doing well. At one point, the 9-1-1 operator says, hey, we're having some trouble finding exactly where you are because he's giving them different addresses. Can you stand up and let us know if there's any cross streets? And he says, no, I can't stand. So when the officers get there, he's on the ground. He reports to the 9-1-1 operator that he's bleeding heavily. That's true. And so when they arrive, they see that he isn't doing well. Like I said, paramedics arrive and then the paramedics tell him, hey, we're going to get you to the hospital. And he says, OK. So here he's consenting to the medical treatment at issue. I don't think there's really a debate about consent in this case here. And he never revokes or limits that consent, which is also an important factor in this case because he did report a crime. He reported that someone else shot him and there's a governmental interest in ensuring that the government investigates and catches and ultimately holds responsible people who shoot other people. Now, that ended up not being true. But he did report a crime. He consented. And that consent, he never limited that consent in any way. And that consent was ongoing. Well, counsel, can I just stop you there? So your opponent suggests maybe he consented to getting the bullet out and saving his life, but he didn't consent to giving the bullet to the law enforcement authorities. Yes, Your Honor. Tell me how the consent would cover giving the bullet over to authorities. Absolutely. So here he's reporting a crime and that's important because that consent would then be related to the bullet, which is evidence of that crime as well. So there's, I think, implicit consent that there is going to be law enforcement engagement here. Your Honor, I'd also like to discuss exigency and the plain view doctrine as well because I think those come into play as well. Here, there's an exigent circumstance to save his life. How does that get you to turning the bullet over to authorities? Under plain view, Your Honor, because once someone sees the bullet in his body, that's plain view that it's evidence of a crime. There's probable cause that either he recklessly shot himself or, as Judge Tinkovich mentioned earlier, that it could be an assault of him and especially where the bullet is in his body here. We have a bullet that's through his leg, his upper leg, through a scrotum in his leg. This is not the sort of place that a bullet would normally be absent any sort of criminal activity of some sort. So under a plain view analysis here as well. Well, when are you saying the view was plain? When the surgeon opened up the leg and then saw it? Is that, wouldn't you judge, plain view? Yes, Your Honor, here we're saying that, you know, if they're all government actors that that is when the government saw that the bullet was in plain view. So it's entitled to seize that bullet at that point. And then there's nothing improper about then transferring it over to the police department so they can continue their investigation into where that bullet came and how it got there. Well, are you arguing then that I guess he consented to having the bullet given to law enforcement because he called 911? Is that what it comes down to? Here, not just that he called 911. It's also what he said on the 911 call. Okay. That it's not anytime someone calls 911 or goes to the hospital. Say someone said I was getting engaged. They put the engagement ring in my drink. I drank that. I've got a ring in my body. I need some help. That's not consenting to law enforcement activity there in that same way. So it's limited by what he told the government when he reported the crime here as well. So when you report a crime that there was an assailant, you consent to having any evidence on your person turned over for investigative purposes? I think that's what's implied by what he told them on the specific facts of this case here that in order to investigate whether or not someone actually shot him, they have to investigate where that bullet came from. And that bullet is evidence of a crime here. Yeah, the only problem I guess that I'm trying to get over is your argument with the warrant suggests he may have shot himself. So you're investigating whether he shot himself. So that's a little different, isn't it, than investigating an assailant? Yes, Your Honor. I think also the timeline is he's at the hospital while the police are conducting their investigation as well. I mean, it's not clear from the record when exactly they've determined. Certainly the warrant happens at 940. Mr. Gay is in the hospital earlier than that as well. So it is the argument here that his consent was ongoing here. Even if it's evidence of either false reporting or an aggravated assault, you know, cause to seize it at some point. But don't we still need a warrant? Doesn't the police still need to get a search warrant to seize that evidence? No, Your Honor. They don't need to, especially when the government actors here are at the hospital because when they see it in plain view here, that's plainly evidence of crime. What's your lead argument on the bullet? What's the argument that you think is your strongest? Is it plain implied consent or plain view? I know you have three or four theories, but. Consent, Your Honor. Consent is here what the government is relying on. And then it would be exigency, plain view, and then abandonment as the court alluded to as well. Because with the abandonment argument here, we have someone who said someone else shot me. And he never tells anyone else that it is his. In fact, his entire defense at trial is that someone else shot me. He never really convinces an expectation of privacy in that bullet. And so those statements would, in the eyes of a reasonable officer, show that the defendant manifested an intent to disavow ownership of that property. So I see my time's running out. If the court has no other questions, I'd ask the court to affirm. Thank you, counsel. Just to respond to a few things that my learned friend here said. First of all, guidance. There's nothing that suggests guidance. And I think proof of that, beyond the fact that the government's briefing below couldn't even decide on which crime was allegedly committed, is the return on the affidavit. They didn't seize a laptop. Instead, they seized knee pads. They seized a ball cap. So that clearly doesn't go to the crime of false reporting. It doesn't go to the crime of attempt to influence a public servant. And it certainly doesn't go to a crime of an aggravated burglary. The court mentioned Lee. And I think this is fundamentally distinguishable from Lee in that, yes, Lee had some issues. The key thing in Lee, though, was that in the affidavit and in the warrant, they specifically mentioned that they were concerned that Mr. Lee was deliberately doing things to hide the identity of the people who were buying the firearms and doing those things also to evade taxes. Those are very specific crimes and categories of crimes. We have nothing to that level of specificity here. Also related to the notion that this is an overbroad warrant, I think we can take a lot of guidance from Suggs. Suggs at least had identified that the person who they were investigating was a felon, which saved the provision about any and all firearms and any and all ammunition. We do not have that in this case. The reason Suggs was remanded back for a good faith determination after finding that the warrant itself was overbroad was the catch-all phrase, which the Suggs 1 court was very clear in saying, look, sure, there are some legitimate pieces to this warrant, but this catch-all phrase is bigger than those pieces and consumes them all. And we have that same catch-all phrase in this case. And it's evident on its face in page 45 of Volume 1 in the Record on Appeal. And then, as far as it goes, what happened at the hospital. The government seems to be conflating the idea of the collective knowledge doctrine to apply to any and all state actors. And there is no case law in point that does so much. That eliminates its plain view argument. And ultimately, I will leave the court with this, a benign motive, the ultimately admirable goal of saving someone's life, of providing medical treatment, cannot justify a departure from Fourth Amendment protections, given the pervasive involvement in law enforcement in furthering the state's general interest in criminal control. And with that, I submit the case for decision. Thank you. Thank you, counsel. That was very helpful. You're excused, and the case is submitted.